**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIEAUNA GIBSON,<br><br>  Plaintiff,<br><br>v.<br><br>ANTHONY VALVANO, *et al.*,<br><br>  Defendants. | Civil Action No. 21-3150 (MAS) (TJB)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants' Motions to Dismiss (ECF Nos. 57, 58, 61) Plaintiff's Third Amended Complaint (ECF No. 51) in this matter. Plaintiff filed responses to the motions (ECF No. 62-63), to which Defendants replied (ECF Nos. 64-66). For the following reasons, Defendants' motions are granted, and all of Plaintiff's claims other than her individual capacity excessive force claims against Defendants Valvano, Bethea, Burlian, Torres, Riotto, Cascarelli, Green/Bakserville and John Does 1-6 shall be dismissed at this time.

**I.      BACKGROUND**

In July 2015, Plaintiff, a convicted state prisoner, was placed in the Edna Mahan Correctional Facility, a New Jersey state prison for women. (ECF No. 51 at 2.) According to Plaintiff, the prison has a "long and well-documented history" of abuse, which she does not detail. (*Id.* at 2-3.) On July 20, 2017, she was placed in administrative segregation, where she remained in solitary confinement between July 2017 and her release from Edna Mahan in July 2020. (*Id.* at

3.) Plaintiff alleges that there was no legitimate disciplinary reason for this placement and that her placement in segregation was contrary to state law. (*Id.*)

Plaintiff alleges that, during this time, she was subjected to "physical, verbal, and psychological abuse," about which she does not elaborate. (*Id.*) She filed numerous grievances about this abuse as well as requests for medical care, which Plaintiff alleges were either denied or never acknowledged. (*Id.* at 4.) As a result of being confined to an allegedly abusive institution, Plaintiff contends she suffered "severe and debilitating emotional distress and mental illness and physical ailments" she does not describe. (*Id.*)

Although Plaintiff provides little detail about the facts of her alleged mistreatment, she does allege that "on at least three different occasions" she was "physically assaulted" by at least some of Defendants Bethea, Burlian, Torres, Cascarellie, Green/Baskerville, Perez, and other John Doe prison staff, which she alleges resulted in painful injuries and distress and occurred without provocation. (*Id.* at 4.) With respect to one instance, which took place on November 5, 2019, Plaintiff alleges that Cascarellie struck her with a baton and Perez struck her repeatedly with a shield, resulting in injuries including nerve injuries in her back for which she was treated in a hospital in December 2019. (*Id.* at 5.) Plaintiff alleges a second incident occurred at an unknown time prior to November 2019. According to Plaintiff, while being removed from her cell after being accused of a disciplinary violation, she was punched twice and had her arm twisted by Defendants Torres and Bethea. (*Id.*) With respect to the final specific instance, Plaintiff alleges that Green/Baskerville pulled her arm and hit her with keys in early 2020 after she made complaints regarding food. (*Id.*)

Without providing any allegations for so concluding, Plaintiff asserts that the supervisory Defendants in this matter, including Defendants St. Paul, Keller, Davis, Hicks, and other John Doe supervisors, should have had either actual or constructive knowledge of these incidents and thus

2

can be said to have acquiesced in those attacks. (*Id.* at 6.) Finally, Plaintiff also alleges she was "not allowed to attend church services on Sunday, as required by her religious beliefs" and was instead only allowed brief chapel visits on Tuesdays. (*Id.* at 7.)

Based on these allegations, Plaintiff claims that all Defendants other than Hicks conspired to violate the Due Process rights of Edna Mahan prisoners, allegedly in violation of 42 U.S.C. § 1985, and that the supervisory Defendants denied her due process by failing to respond to grievances in violation of her rights as protected by 42 U.S.C. § 1983. Plaintiff also raises a claim for excessive force against the officers involved in the three specific instances described above pursuant to both § 1983 and the New Jersey Civil Rights Act ("NJCRA"). In addition, Plaintiff raises a claim for First Amendment Retaliation under both § 1983 and the NJCRA as she believes the assaults against her were retaliatory in nature and that numerous Defendants denied her medical care following the November 5, 2019 incident. Plaintiff additionally alleges that Defendants denied her the right to free exercise of religion, which gives rise to claims under § 1983 and the NJCRA. Finally, Plaintiff brings a claim for supervisory liability against the supervisory Defendants for all remaining claims "under the doctrine of *respondeat superior*." (*Id.* at 13.) Defendants now move to dismiss Plaintiff's claims.

## II.     **LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

### III.  DISCUSSION

In their motions, Defendants seek the dismissal of all of Plaintiff's claims. Before reaching Defendants' individual arguments, the Court notes that Plaintiff's claims arise out of either 42 U.S.C. §§ 1983 and 1985 or the NJCRA. Section 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. County of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a claim under the statute, a plaintiff must show that she was a deprived of a federal constitutional or statutory right by a state actor. *Id.* The New Jersey Civil Rights Act is New Jersey's state law analogue to § 1983, and, with rare exceptions not applicable here, is construed as being identical to an equivalent claim brought pursuant to § 1983. *See, e.g., Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). The Court will thus discuss Plaintiff's § 1983 and NJCRA claims together as they are subject to the same principles and legal requirements.

Section 1985, which is related to § 1983, applies to a more specific class of claims – claims in which an individual alleges that multiple individuals conspired to deprive the individual of her rights. A claim under § 1985(3), the subsection of § 1985 dealing with deprivations of rights, is not available for any and all claims of conspiracy. Instead, a plaintiff seeking to raise a claim under the statute must plead facts showing a conspiracy which existed for the purpose of depriving a person or class of persons of equal protection, as well as an act in furtherance of that conspiracy, and resulting injury. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006). An integral part of a claim under the statute is thus a conspiracy whose intent is "to deprive [a member of a protected class] of equal protection, or equal privileges and immunities [based on] some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* Absent an allegation of such discriminatory, class-based animus, no § 1985(3) claim is available. *Id.*

Here, Defendants rightfully assert that Plaintiff's § 1985 claim fails to include any allegation of invidious class-based animus. Plaintiff does not allege that she was subjected to a conspiracy based on race, or sex, or the like. Instead, Plaintiff alleges that she should be permitted to proceed by alleging that the class in question here is "prisoners." Prisoners, however, are not a protected class. *See, e.g., Higgs v. Prezioso*, No. 06-5815, 2007 WL 1521118, at *11 (D.N.J. May 18, 2007); *see also Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001) (prisoners "are not a suspect class["] sufficient to support an equal protection claim). As Plaintiff has alleged no protected status sufficient to give rise to a § 1985 claim motivating the alleged conspiracy against her, her claims under § 1985 are dismissed without prejudice.

Turning to Plaintiff's other civil rights claims, Defendants argue that Plaintiff's due process claims must fail as they are premised on issues with the prison grievance system, to which prisoners have no right of access. As Defendants correctly assert, prisoners have no right to a prison grievance system, nor a constitutional right to a response in the event that a prison creates

5

such a system.[1] *See, e.g., Roberts v. Aviles*, No. 10-5916, 2012 WL 603790, at *1 n.4 (D.N.J. Feb. 16, 2012); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"). As Plaintiff had no right to a prison grievance procedure, nor any constitutionally protected right to use that system after it was established, it necessarily follows that she had no right to any form of Due Process related to the use of the system. As Plaintiff's Due Process claims are premised on the abuse or denial of grievance access, and she had no protected right to such access, her Due Process claims are dismissed.

In a related argument, Defendants argue that they are entitled to dismissal of Plaintiff's First Amendment retaliation claims as she has not pled sufficient facts to connect the alleged assaults to any alleged grievance. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006). In her current complaint, Plaintiff conclusorily alleges that the assaults amounted to retaliation in response to her grievances – an assertion that is somewhat contrary to her factual allegations that at least two of the three incidents were part of disciplinary cell moves or were a response to annoyance regarding Plaintiff's

---

[1] In her response, Plaintiff asserts that the Supreme Court's decision in *Ross v. Blake*, 578 U.S. 632 (2016), suggests the potential availability of a Due Process claim based on interference with a grievance system. Plaintiff is entirely mistaken. The *Ross* decision had nothing to do with that question and instead dealt with an entirely different issue – whether interference with a grievance system might be sufficient to forgive a plaintiff's failure to administratively exhaust his claims prior to filing suit as required by 42 U.S.C. § 1997e. *Ross*, 578 U.S. at 638-49. Indeed, the only claims at issue in *Ross* were related to excessive force, not the Due Process clause. *Id.* at 636-37. *Ross*, therefore, provides no support for Plaintiff's position.

complaints about late food. Plaintiff does not plead any facts directly connecting any of the assaults to the grievances in question, nor does she provide anything but a conclusory allegation, which is in part contradicted by her other allegations, to suggest a retaliatory motive on the part of those who assaulted her. As Plaintiff has failed to plead facts, rather than mere conclusory allegations, of retaliatory motive or a causal nexus between her alleged grievances and the alleged assaults, she has failed to plead a plausible claim for First Amendment retaliation, and her retaliation claims are therefore dismissed without prejudice.

Defendants next seek the dismissal of Plaintiff's deliberate indifference to medical needs claims, arguing both that Plaintiff did not properly exhaust those claims, and that those claims fail to state a plausible claim for relief. As Plaintiff points out, however, the state of exhaustion, or the ability of Plaintiff to avoid having to show exhaustion, is a matter that goes beyond the face of Plaintiff's complaint, and is not an appropriate basis for a motion to dismiss at this time. *See Ross*, 578 U.S. at 638-49 (determination of whether grievance procedures were available is fact specific and detail intensive). In any event, because Plaintiff was released from Edna Mahan in the early summer of 2020, and filed this matter in 2021, it is not entirely clear that Plaintiff was a prisoner at the time she filed her initial complaint or remained a prisoner by the time the operative complaint was filed. As a prisoner ceases to be subject to the exhaustion requirement following release, *see Garrett v. Wexford Health*, 938 F.3d 69, 84 (3d Cir. 2019), and it is not clear that Plaintiff was a prisoner when her Third Amended Complaint was filed, and as it is not entirely clear whether remedies were available to Plaintiff, the Court cannot find her claims barred for lack of exhaustion at this time. If Plaintiff was a prisoner at the operative time, and discovery proves she did not properly exhaust, Defendants are free to raise that issue in an appropriate summary judgment motion.

As to the merits of Plaintiff's medical claims, Defendants contend that she fails to state a plausible claim for relief. To plead a plausible claim for relief for deliberate indifference to medical needs, a plaintiff must plead facts indicating both that the defendants knew of a serious medical need and were deliberately indifferent to that need. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003). Deliberate indifference is a "subjective standard of liability consistent with recklessness" which will be found only where the defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 582 (internal quotations omitted). Deliberate indifference therefore requires more than mere negligence. *See King v. County of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). A medical need will be considered sufficiently serious to support a constitutional claim where that need "has been diagnosed as requiring treatment or is so obvious that a lay person would easily recognize the necessity of a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988).

Plaintiff's medical claim is based on her allegations that, after the November 2019 alleged assault, she was not taken to a hospital for further treatment until sometime in December 2019. Although Plaintiff alleges some nerve damage, she provides no detail to her claims. She does not provide any detail as to what injuries she suffered at the time of the incident, nor does she allege any facts regarding what knowledge any of the named Defendants had or should have had regarding her injuries. Without more detail, this Court cannot find that Plaintiff has plausibly pled that Defendants knew or should have known of a serious medical need requiring hospital treatment following the assault. Plaintiff's vague allegations of lasting damage, without specific allegations of the state in which she found herself after the alleged attack, are not sufficient to state a plausible claim that the named Defendants knew or should have known that she required immediate hospitalization, and the only harm Plaintiff specifically identifies—nerve damage in her back—is

hardly obvious in and of itself. Plaintiff's medical claims must therefore be dismissed without prejudice at this time.

Defendants next argue that the Court should dismiss Plaintiff's free exercise claims for failure to state an adequate claim for relief. To raise a plausible civil rights claim for relief based on the denial of free exercise, a plaintiff must initially allege facts indicating that she has sincerely held beliefs which are religious in nature which have been impugned by prison regulations. *See DeHart v. Horn*, 227 F.3d 47, 51-52 (3d Cir. 2000). Where such facts are pled, the Court must then balance a number of factors to determine whether the curtailment of religious practice is sufficiently related to penological interests to pass muster. *Id.*

Even if a plaintiff pleads facts suggesting a constitutional violation, however, that alone is not enough. She must plead facts showing that the named Defendants had personal involvement in the alleged wrong. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). A supervisor or employer likewise may not be held vicariously liable for the actions of his subordinates under a *respondeat superior* theory of liability. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Instead, a supervisory official may only be held liable either where he knew of and acquiesced in the wrong and was thus personally involved, or where a policy, practice, or custom the supervisor put into place was the moving force behind the violations in question. *Id.*; *see also Los Angeles County v. Humphries*, 562 U.S. 29, 35-36 (2010); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Natale*, 318 F.3d at 583-84.

As Defendants rightly point out, although Plaintiff does allege that she was denied Sunday worship and was instead provided only Tuesday worship accommodations, she does not allege how any of the named Defendants were directly involved in that action. Plaintiff does not allege who made the decision to restrict her, why that decision was made, or how any named Defendant was personally involved in such a decision. As such, Plaintiff has failed to plead that any

9

Defendant was personally involved in the curtailment of her religious rights, and she thus fails to state a plausible claim for relief on that basis against any named Defendant. Plaintiff's religious exercise claims are therefore dismissed without prejudice.

Although none of the officers directly involved in the three alleged incidents of excessive force seek to have that claim dismissed against them in their personal capacity at this time, Defendants move to have any and all official capacity claims against them dismissed because a suit against a state employee sued in his official capacity is no more than a suit against his employer – in this case arms of the state in the form of a state prison or state Department of Corrections. State employees in their official capacities are indeed immune from suit under § 1983 and the NJCRA as such a suit is merely a suit against their office and, in turn, employer, a prison and state department, neither of whom is a person subject to suit and each of whom would in any event be entitled to Eleventh Amendment immunity in this Court. *See, e.g., Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health and Human Servs.*, 730 F.3d 291, (3d Cir. 2013); *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013); *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013). Thus, while Plaintiff's excessive force claims against Defendants Valvano, Bethea, Burlian, Torres, Riotto, Cascarelli, Green/Bakserville and John Does 1-6 in their individual capacities shall proceed at this time as they are not subject to a motion to dismiss, all official capacity claims against them are dismissed.

Finally, the supervisory Defendants move to have Plaintiff's supervisory claims dismissed as they are based on respondeat superior, an impermissible theory of liability. As Plaintiff admits this fact and has withdrawn her supervisory liability claim (*See* ECF No. 63 at 3), and as it is clear that such liability is not available under the statutes for the reasons expressed above, Plaintiff's supervisory claims are dismissed without prejudice.

## IV. <u>CONCLUSION</u>

For the reasons expressed above, the moving Defendants' Motions to Dismiss (ECF Nos. 57, 58, 61) are granted, and Plaintiff's official capacity claims against the moving Defendants are dismissed. An order consistent with this Opinion will be entered.

/s/ Michael A. Shipp<br>
<b>MICHAEL A. SHIPP</b><br>
<b>UNITED STATES DISTRICT JUDGE</b>