**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIEAUNA GIBSON,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY VALVANO, *et al.*,<br><br>Defendants. | Civil Action No. 21-3150 (MAS) (TJB)<br><br>**MEMORANDUM ORDER** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants' motions to dismiss (ECF Nos. 84-86) Plaintiff's Fourth Amended Complaint ("FAC") in part. (ECF No. 77.) Plaintiff filed opposition to the motion (ECF No. 89), to which Defendants replied (ECF Nos. 91-93). For the following reasons, Defendants' motions are granted in part and denied in part.

Because the Court previously summarized the background of this matter at length in a prior opinion (*see* ECF No. 67 at 1-3), the Court need only briefly summarize the facts of this matter for the purposes of this Opinion. Plaintiff's FAC alleges that Plaintiff was attacked by prison guards during her incarceration in the Edna Mahan facility on at least three separate occasions between November 2019 and early 2020. (ECF No. 77 at 4-6.) Plaintiff alleges that these attacks occurred either without a clear reason, as part of a cell phone removal following a disciplinary charge for throwing urine, or as a response to Plaintiff complaining about her food being late. (*Id.* at 5.) The counts of the FAC related to these assaults are not at issue here.

In two separate counts, however, Plaintiff asserts that at least some of these assaults were also retaliatory in nature in response to her filing of grievances. (*Id.* at 10-12.) As to these claims, Plaintiff alleges that the guard Defendants should have had "actual or constructive knowledge" that she filed grievances. According to Plaintiff, at least some of the guard Defendants escorted her to Medical where she deposited paper grievances. In addition, the supervisory Defendants had "actual knowledge" of the grievances because her mother called them and wrote them letters about the grievances. (*Id.*) Plaintiff then alleges, without any supporting factual allegations, that the assaults were therefore "retaliatory" for the grievances she filed. (*Id.*) Plaintiff does not detail which grievances gave rise to the alleged retaliation or about whom those grievances were written specifically.

In a separate count of the FAC that is also the subject of the pending motions, Plaintiff alleges that she was "prohibited from attending church services on Sundays, as she sincerely believed was necessary in her faith, and was instead offered a very brief visit to the chapel on Tuesdays," which she argues violated her rights to religious free exercise under the First Amendment and related state constitutional provisions. (*Id.* at 14-15.) Plaintiff alleges this was the result of an unspecified policy, created or enforced by Defendants Keller, Davis, St. Paul and several John Doe Defendants, which denied "some or all inmates" in administrative segregation Sunday worship opportunities. (*Id.*)

In the final series of claims at issue here, Plaintiff seeks to raise Eighth Amendment and related state law claims in the newly asserted Counts Thirteen and Fourteen of the FAC alleging that Defendants were deliberately indifferent to her suicidal ideations during her long stay in solitary confinement. (*Id.* at 15-17.) Following arguments by Defendants that these claims, raised for the first time in the FAC, were clearly untimely, however, Plaintiff in her opposition to the

motion withdrew these counts. (*See* ECF No. 89 at 4.) As such, Plaintiff's counts Thirteen and Fourteen are dismissed without prejudice as withdrawn.

   This Court now turns to Defendants' remaining arguments. In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

In their motions, Defendants first argue that they are entitled to dismissal of Plaintiff's First Amendment retaliation claims[1] as she has not pled sufficient facts to connect the alleged assaults to any alleged grievance. Plaintiff, for her part, argues in opposition that she "has no specific knowledge as to the role of any Defendant in the handling of her grievances," that she instead relies on speculation that Defendants acted in response to grievances they knew or should have known had been filed, and that she relies on the fact that discovery may provide further details to support a claim to proceed beyond the motions to dismiss.

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006). As in her prior complaint, Plaintiff provides little detail in her retaliation claim, asserting that Defendants knew she filed some kinds of grievances or learned of the grievances through some calls or letters from Plaintiff's mother, and that she believes the assaults were therefore retaliatory. The FAC is devoid of any allegations about the nature or target of any specific grievance, mentioning only that Plaintiff filed approximately twenty grievances regarding many subjects, without any specific attempt to connect any particular grievance to the alleged retaliation other than through a conclusory allegation of retaliation. Much like the Third Amended Complaint, Plaintiff's own allegations suggest that the second and third instances of

---

[1] Plaintiff pleads each claim involved in this motion both as a basis for relief under 42 U.S.C. § 1983, which provides a basis for civil relief for violations of federal rights, and under the New Jersey Civil Rights Act, a state level analogue to § 1983. Because claims under both statutes, absent rare exceptions not applicable here, are construed in an identical manner and are subject to the same defenses, this Court discusses only the federal versions in this Order, but the same logic applies to both types of claims, and the Court thus decides both the § 1983 and NJCRA claims together. *See, e.g., Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011).

attacks were not retaliatory as to grievances. In the absence of any attempt to connect any Defendant's actions to a response to specific grievance complaints, the "constructive" or after the fact knowledge of unspecified grievances being filed is insufficient to support an inference that there is a causal connection between those grievances and the assaults in question occurring. As such, Plaintiff has failed to plead a plausible retaliation claim as to any of the moving Defendants, and Plaintiff's First Amendment and state constitutional retaliation claims must therefore be dismissed without prejudice.

Defendants next argue that this Court should dismiss Plaintiff's free exercise claims. In response, Plaintiff acknowledges that these claims only apply to the Defendants she alleged created a policy—Defendants Davis and Keller—and that the other Defendants were not involved in the decision at question in these claims. In so doing, Plaintiff effectively withdraws these claims as to the other moving Defendants. Plaintiff's free exercise claims are therefore dismissed as withdrawn against all moving Defendants other than Davis and Keller. Defendants Davis and Keller in turn argue that they are entitled to qualified immunity for these claims either because Plaintiff fails to state a plausible claim for relief for a free exercise claim, or because the right to Sunday worship, as opposed to worship at an alternative time, is not clearly established.

"The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). In determining whether immunity applies, courts use a two-pronged test: "a court must decide [first] 'whether the

facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established' at the time of [the] defendant's alleged misconduct." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

For a claim to be clearly established, "existing precedent [must have] placed the . . . constitutional [right in] question *beyond debate.*" *Id.* at 638. With the exception of cases involving "obvious violations" of prior Supreme Court rulings, a plaintiff's claim will only be "clearly established" where "the violative nature of the *particular* conduct [was] clearly established." *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020). The conduct in question must therefore be defined at an "appropriate level of specificity," *Spady*, 800 F.3d at 638, and the plaintiff must identify "a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional provision in question. *James*, 957 F.3d at 169-70. For the purposes of this analysis, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals" in effect at the time of the conduct in question. *Id.* at 170.

To raise a plausible civil rights claim for relief based on the denial of free exercise, a plaintiff must initially allege facts indicating that she has sincerely held beliefs which are religious in nature which have been impugned by prison regulations. *See DeHart v. Horn*, 227 F.3d 47, 51-52 (3d Cir. 2000). Where such facts are pled, the Court must then balance a number of factors to determine whether the curtailment of religious practice is sufficiently related to penological interests to pass muster. *Id.*; *see also Turner v. Safley*, 482 U.S. 78 (1987).

Defendants first argue that the right to worship on Sunday, as opposed to alternative days, is not clearly established, relying on cases such as *Weir v. Nix*, 114 F.3d 817, 821 (8th Cir. 1997) (finding that requiring certain inmates to worship on Fridays as opposed to during the Sunday Sabbath did not "substantially burden free exercise rights" sufficient to form the basis of a Free

6

Exercise claim); and *Abegbuji v. Green*, 280 F. App'x 144, 148 (3d Cir. 2008) (finding no violation where a plaintiff was limited to one religious service per week rather than the requested four). Plaintiff, in response, relies on two district court cases for the assertion that a right to worship on the Sabbath is clearly established. *See Islaam v. Greeco*, No. 12-7022, 2014 WL 672985, at *3 (D.N.J. Feb. 21, 2014) (finding that a plaintiff's claim that he was denied the ability to attend weekly Friday Muslim prayer services "may be sufficient to state a . . . claim"); *Albrecht v. Williams,* No. 04-1895, 2009 WL 3296649, at *2 (D.N.J. Oct. 13, 2009) (Bongiovanni, M.J., finding that the "right to freely exercise one's religious beliefs has been clearly established" since *Cruz v. Beto*, 405 U.S. 319, 322 (1972), while declining to specifically find that the right to abstain from work on the Sabbath was clearly established under First Amendment precedent).

Neither case Plaintiff cites is sufficient to clearly establish the right asserted here—the right to worship on the Sabbath itself as opposed to alternate day worship accommodations—both because they are only isolated District Court cases, and because *neither* cited case explicitly found that Sabbath worship was a clearly established constitutional right. The cases Defendants have provided, and those this Court has reviewed, support the idea that alternative day worship may be sufficient where other factors support such a decision for security needs. *See Weir*, 114 F.3d at 821; *Abegbuji*, 280 F. App'x at 148; *see also Firewalker-Fields v. Lee*, 58 F.4th 104, 117 (4th Cir. 2023) (finding that the availability of alternate worship services other than the normally required services supports a finding that a restriction on regular required service time worship was reasonable and not violative of the First Amendment); *Hall v. Sutton*, 581 F. App'x 580, 583 (7th Cir. 2014) (collecting cases for the proposition that rescheduling or canceling religious services for scheduling or safety reasons did not violate the First Amendment); *but see Whitney v. Brown*, 882 F.2d 1068, 1074 (6th Cir. 1989) (restricting inmates in certain parts of prison from joining Sabbath worship services violates the First Amendment in the absence of strong security interests).

Having reviewed these cases, what is clear is that this Court cannot yet determine whether the right at question here is clearly established. In light of the central place the Sabbath or specific days of worship have in many of our nation's religious traditions, including Christianity, Judaism, and Islam, and because Defendants do not provide any analysis as to the other *Turner* factors at this time, Defendants' argument regarding the clearly established nature of the right in question is premature.[2] Defendants are free, however, to reraise their argument as to the clearly established nature of the right at summary judgment if appropriate in light of the other *Turner* factors.

In their remaining arguments, Defendants Keller and Davis argue that Plaintiff has not pled a proper claim for relief under the First Amendment. Here, Plaintiff alleges that Davis and Keller created a policy which prohibited certain inmates in segregated custody, including Plaintiff, from attending Sunday worship services open to other inmates without a clear supporting reason. Such allegation is sufficient at the pleading stage to state a plausible claim for relief. *DeHart*, 227 F.3d at 51-52. Defendants Keller and Davis's motions are thus denied as to Plaintiff's Free Exercise claims at this time.

**IT IS THEREFORE** on this <u>17th</u> day of October, 2023, **ORDERED** that:

1. Defendants' motions (ECF Nos. 57, 58, and 61) are **GRANTED IN PART** and **DENIED IN PART**;

2. Plaintiff's First Amendment Retaliation claims are once again **DISMISSED WITHOUT PREJUDICE**;

---

[2] Indeed, given the central place in certain religious traditions of worship on a particular day, such as the Jewish Sabbath tradition and the Roman Catholic Sunday Mass obligation, as well as similar requirements in other Christian sects, it may be the case that the lack of Sabbath/Sunday worship may fall into the category of cases where the denial of such worship is a patently obvious infringement in the absence of sufficient security interests. This Court need not so decide at this time, as in the absence of information as to the remaining *Turner* factors, it is nearly impossible to address the question of how clearly established the right in question is.

3. Plaintiff's claims in Counts Thirteen and Fourteen of the Fourth Amended Complaint are **DISMISSED AS WITHDRAWN**;

4. Plaintiff's Free Exercise Claims are **DISMISSED AS WITHDRAWN** as to all moving Defendants other than Davis and Keller;

5. Plaintiff's Free Exercise claims shall **PROCEED** at this time against Defendants Davis and Keller; and

6. The Clerk of the Court shall serve a copy of this Memorandum Order upon the parties electronically.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**